B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>ROSENDO GONZALEZ, Chapter 7 Trustee, | **DEFENDANTS**<br>ASTON BUSINESS SOLUTIONS, INC., a California corporation, ERICA MARTIN, an individual, GLENN J. CHAFFIN, an individual; and DOES 1 through XX |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>James A. Dumas (SBN 76284)<br>DUMAS & KIM, APC<br>3435 Wilshire Blvd., Ste. 990<br>Los Angeles, CA 90010<br>Telephone: 213/368-5000 | **ATTORNEYS** (If Known)<br>WILLIAM H. BROWNSTEIN & ASSOCIATES,<br>Professional Corporation<br>11740 WILSHIRE BOULEVARD, SUITE A2301<br>LOS ANGELES, CALIFORNIA 90025-6531 |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☒ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

1. ACTUAL FRAUDULENT TRANSFER [CAL. CIV. CODE § 3439.04(A)(1)]
2. CONSTRUCTIVE FRAUDULENT TRANSFEER [CAL. CIV. CODE §§ 3439.04(B)(2) AND 3439.05]
3. COMMON LAW FRAUDULENT CONVEYANCE
4. CIVIL CONSPIRACY

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☒ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ According to Proof |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR<br>David Macmillan | BANKRUPTCY CASE NO.<br>2:16-bk-21559-NB |||
| DISTRICT IN WHICH CASE IS PENDING<br>Central | DIVISION OFFICE<br>Los Angeles || NAME OF JUDGE<br>Hon. Neil W. Bason |
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| PLAINTIFF<br>Rosendo Gonzalez, Chapter 7 Trustee | DEFENDANT<br>David W. Macmillan et. al. || ADVERSARY PROCEEDING NO.<br>2:17-ap-01545-NB |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Central | DIVISION OFFICE<br>Los Angeles || NAME OF JUDGE<br>Hon. Neil W. Bason |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) ||||
| DATE<br>December 23, 2019 || PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>James A. Dumas ||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

James A. Dumas (SBN 76284)
Christian T. Kim (SBN 231017)
DUMAS & KIM, APC
3435 Wilshire Blvd., Ste. 990
Los Angeles, CA 90010
Telephone: 213/368-5000
Facsimile: 213/368-5009
Email: jdumas@dumas-law.com

Attorneys for the Chapter 7 Trustee,
Rosendo Gonzales

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>ATTITUDE MARKETING, INC.,<br><br>Debtors.<br><br>ROSENDO GONZALEZ, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>ASTON BUSINESS SOLUTIONS, INC., a California corporation, ERICA MARTIN, an individual, GLENN J. CHAFFIN, an individual; and DOES I through XX.<br><br>Defendants. | Case No.: 2:19-bk-10552-NB<br><br>Jointly Administered with<br>Case No.: 2:16-bk-21559-NB which is substantively consolidated with<br>Case No.: 2:17-bk-11588-NB<br><br>Adversary No.:<br><br>[Honorable Neil W. Bason]<br><br>**CHAPTER 7 TRUSTEE'S COMPLAINT FOR:**<br><br>1. ACTUAL FRAUDULENT TRANSFER [CAL. CIV. CODE § 3439.04(A)(1)]<br>2. CONSTRUCTIVE FRAUDULENT TRANSFEER [CAL. CIV. CODE §§ 3439.04(B)(2) AND 3439.05]<br>3. COMMON LAW FRAUDULENT CONVEYANCE<br>4. CIVIL CONSPIRACY |

COMES NOW, Plaintiff and Chapter 7 Trustee Rosendo Gonzalez ("Trustee" or "Plaintiff"), as and for his Complaint herein, complains and alleges as follows:

1

**COMPLAINT FOR FRAUDULENT TRANSFER AND TURNOVER OF PROPERTY**

## I.    THE PARTIES AND JURISDICTION

1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157, and this is a core proceeding under 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), or 157(b)(2)(E). In the event this proceeding is determined to include non-core claims for relief, the Plaintiff consents to the entry of a final order or judgment by the Bankruptcy Court as to any such claims. Venue in the Central District of California, Los Angeles Division (the "Bankruptcy Court"), is proper pursuant to 28 U.S.C. § 1409 in that this adversary proceeding is related to the bankruptcy case of Attitude Marketing, Inc. bearing case number 2:19-bk-10552-NB, which is being jointly administered with the case of David Macmillan bearing case number 2:16-bk-21559-NB, which has been substantively consolidated with the case of Cynthia B. Martin, Case No.: 2:17-bk-11588-NB. The consolidated and jointly administered cases are presently pending under Chapter 7 of Title 11 of the United States Code in the Bankruptcy Court. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 because this is a civil proceeding arising in and/or related to the debtor, Attitude Marketing, Inc., and its Chapter 7 case.

2.    Plaintiff Rosendo Gonzalez is the duly appointed and acting Chapter 7 bankruptcy trustee ("Plaintiff" or "Trustee") for the estate of Attitude Marketing, Inc. ("Debtor" or "Attitude Marketing").

3.    Defendant Aston Business Solutions, Inc. ("ABS") is a corporation organized under and existing pursuant to the laws of the State of California.

4.    Defendant Erica Martin ("Erica Martin") is an individual and the daughter of debtor, Cynthia B. Martin. She is a purported shareholder of defendant ABS.

5.    Defendant Glenn J. Chaffin ("Chaffin") is an individual and the husband of defendant Erica Martin. He is a purported shareholder of defendant ABS and its sole officer and director of record. He and defendant Erica Martin reside at 1147 West 21st Street, San Pedro, California.

6. Plaintiff does not know the true names and capacities of the defendants sued herein by the fictitious names DOES I-X, inclusive, and plaintiff therefore sues those defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

7. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as alleged were caused by the acts and or omissions of such defendants and each of them.

8. The Trustee caused Debtor Attitude Marketing, Inc. to file the within Chapter 7 bankruptcy on January 18, 2019. The Court entered an order on February 12, 2019 granting the Trustee's motion to for the case to be jointly administered with the substantively consolidated cases of Debtor David W. Macmillan and Debtor Cynthia Martin.

9. The Trustee previously initiated an adversary proceeding captioned <u>Gonzalez v. MacMillan, et al.</u> bearing case no. 2:17-ap-01545-NB in the David MacMillan bankruptcy case and for the second claim for relief for fraudulent transfer, named the same defendants and made mostly the same factual allegations against them as in this adversary proceeding.

## II.    FACTUAL ALLEGATIONS

10. Plaintiff refers to the allegations set forth in paragraph 1 through 9 hereof and incorporates said allegations herein as if fully set forth hereat.

11. For several years prior to 2013, debtors, Macmillan and Martin, through various entities, including a California corporation by the name of Aston Marketing Group, Inc. ("AMG"), owned and operated a business which specialized in assisting consumers avoid legal obligations to pay ongoing fees and expenses on timeshare properties which they no longer desired to own. They worked with a large staff at an office located at 2239-2241 West 190th Street in Torrance, California

("the 190th Street Property"), as well as with marketing staff scattered throughout the country. The 190th Street Property was owned by MacMillan and Martin through an entity by the name of MARMAC, LLC.

12. They marketed their services to owners of timeshares, entered into contracts obligating consumers to pay $3,000 to $6,000 for their services, and thereafter attempted to implement strategies to relieve the consumers of their timeshare obligations. Consumers paid initial deposits with money back guarantees if they did not succeed in providing the promised relief. Among the strategies utilized by MacMillan and Martin on behalf of their clients was to transfer timeshares to business entities whose sole purpose was to hold timeshares. By 2013, MacMillan, Martin, and their companies were under contract with approximately 9,000 parties who had paid deposits to them and who would be entitled to refunds if they could not provide them relief from their timeshare obligations.

13. In or about 2013, new laws and regulations concerning the liability of timeshare owners on their timeshare contracts came into effect which effectively broke MacMillan and Martin's business model. These laws not only made it impossible for consumers to avoid liability for their timeshare obligations by such strategies as transferring the timeshares to corporations, but they also created potential criminal liability for such activities. This effectively made it extremely difficult for them to continue to provide the services they had promised their clients and gave rise to an enormous potential liability to them. As a consequence of this, MacMillan and Martin made the decision to cease being involved in providing the services they had been promising and to thereafter devote themselves to marketing for new potential clients on behalf of other companies which would actually provide the "fulfillment."

14. In implementing this new business model, they were seeking to leverage their most valuable assets: their existing marketing infrastructure of employees and contract marketers and their

valuable and proprietary data base of potential clients.

15.  Concerned with their liability to their existing clients, and that of AMG and other the entities through which they had been operating, MacMillan and Martin eventually transferred substantially all of the marketing infrastructure and the access to the proprietary data base to entities that ostensibly were neither owned nor controlled by them.

16.  In approximately 2010, the assets and operations shifted to the within debtor, Attitude Marketing, and then in 2014, they shifted to ABS. Each of these shifts was clearly due to the pressure of liabilities and litigation that had been generated by AMG's activities. Timeshare Relief/Aston Marketing Group and Attitude Marketing were indisputably owned by MacMillan and/or Martin.

17.  The continuation of their operations with the implementation of the new business model was through a new entity, ABS, ostensibly owned first by Erica Martin and then by Glenn Chaffin, Erica's live-in boyfriend and future husband. ABS had filed its articles of incorporation on August 12, 2013. Although it was purportedly initially set up for other purposes, it was at all times involved exclusively in providing marketing services to other companies in the timeshare exit industry. From its founding in August, 2013 until January, 2017, ABS had its offices at the 190th Street Property where the other Macmillan businesses continued to be located and he used substantially the same staff and marketing team that had worked for AMG. Although Chaffin was ostensibly the sole officer and director, and usually the only employee, ABS has at all times been controlled by debtor MacMillan and operated for the benefit of debtors MacMillan and Martin.

18.  Both Erica Martin and Chaffin had worked for AMG, although Erica Martin stopped working in 2012 and since been employed as a teacher. By contrast, at all times relevant, Chaffin has been a full-time worker for the larger enterprise, whether considered to be Aston Marketing Group or Attitude Marketing, serving as the so-called "controller" or "director of the accounting department." Although ABS was a start-up business that in 2014, its first year, grossed $9,267,409, more than four

times Attitude Marketing's revenue, Chaffin continued to be occupied with the larger Macmillan/Martin enterprise. According to MacMillan's testimony, Chaffin has been the person who ran the "day-to-day" operations of Attitude Marketing and bank records disclose that as late as 2018, just before the Attitude Marketing bankruptcy filing, Chaffin was still signing 80% of the Attitude Marketing checks. Yet, in order to create the appearance that he was devoting himself to his own new and separate business, since 2013 he has not been an employee of Attitude and his salary has come exclusively from ABS.

19. ABS replaced Attitude Marketing as the recipient of the revenue derived from the Macmillan/Martin timeshare relief business but the latter company was kept alive to provide administration of the enterprise, which at that point meant "payroll services" and otherwise serving as "an umbrella company to provide shared services to the other entities," inclusive of ABS and the new operator of the call center, Florance Communications.

20. The fulcrum for this critical pivot by the MacMillan/Martin enterprise was the transfer of the timeshare owner data base from Attitude Marketing to ABS pursuant to a "Sales Agreement" allegedly executed on August 18, 2013, a mere six days after the incorporation of ABS. In spite of the fact that Erica Martin was an officer and the only shareholder through at least the end of 2013, Chaffin signs the agreement as "principal." The data base had always been the key to the business's ability to market to timeshare owners and had been developed over the several years that the business had been in operation. It is unclear when Attitude Marketing, which came into existence in May, 2011, was deemed to have become its owner. Suffice it to say that the alleged transfer of the data base to ABS was intended to render it theoretically impossible for Attitude Marketing to continue in the timeshare exit industry other than in service of ABS and the new business model.

21. According to the agreement between ABS and Attitude Marketing, the "purchase price" for the data was approximately $786,800, a precise number allegedly arrived at through a

"negotiation" between Glenn Chaffin and David MacMillan and calculated by multiplying the number of timeshare owners then in the data base by the alleged prevailing rate in the market in the timeshare exit industry for such data bases.

22. Although the agreement is dated August 18, 2013, the first payment on it was not made until January, 2014, after ABS was up and running and already using the data to implement the new business model. Altogether, $676,700 in payments were made over the course of 2014 with the remaining $110,000 paid in 2015. There is no contention that there was any source for these payments other than ABS's profits from using the data base.

23. There are creditors of Attitude Marketing that did not know and could not reasonably have known about the transfer or the roll that Martin and Chaffin played in the transfer within one year of the bankruptcy filing on January 18, 2019.

24. Defendants Martin and Chaffin were co-conspirators in the fraudulent transfer of assets from debtor to ABS.

### III. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### ACTUAL FRAUDULENT TRANSFER

### (California Civil Code § 3439.04(a)(1))

### (Against Defendant Aston Business Solutions, Inc.)

26. Plaintiff refers to the allegations set forth in paragraph 1 through 24 hereof and incorporates said allegations herein as if fully set forth hereat.

27. No earlier than August 12, 2013, MacMillan and Martin caused Attitude Marketing to transfer its assets and good will to defendant ABS with the actual intent to hinder, delay, and defraud their creditors.

28. As alleged above, in efforts to avoid liability from their clients and creditors,

MacMillan and Martin transferred substantially all of the marketing infrastructure and the access to the proprietary data base to entities that ostensibly were neither owned nor controlled by them, including and ultimately to defendant ABS.

29. Although defendants Erica Martin at first and then Glenn Chaffin were purportedly the sole officer and director, ABS has at all times been controlled by debtor MacMillan and operated for the benefit of debtors MacMillan and Martin. The transfer of debtor's assets, including the 2013 sale and transfer of the data base, were done with the purpose of hiding assets from the increasing number of creditors based on lawsuits filed against MacMillan, Martin, and their entities that were known to the creditors.

30. Plaintiff is entitled to a judgment avoiding the transfers and/or a money judgment against the defendant equal to the value of the assets transferred.

31. Plaintiff is further entitled to an award of exemplary and punitive damages against defendant, according to proof.

## SECOND CLAIM FOR RELIEF

## CONSTRUCTIVE FRAUDULENT TRANSFER

**(California Civil Code §§3439.04(a)(2) & 3439.05)**

**(Against Defendant Aston Business Solutions, Inc,)**

32. Plaintiff refers to the allegations set forth in paragraph 1 through 31 hereof and incorporates said allegations herein as if fully set forth hereat.

33. No earlier than August 12, 2013, MacMillan and Martin caused Attitude Marketing to transfer its assets and good will to defendant ABS without receiving reasonably equivalent value in exchange.

34. The effect of these transfers was that the value of the remaining assets of Attitude Marketing was unreasonably small in relation to their known and reasonably anticipated debts as they

existed at the time of the transfer and as they could expect to arise from the businesses they were conducting. The transfers thereafter rendered the debtor incapable of paying its debts as they came due.

35. Plaintiff is entitled to a judgment avoiding the transfers and/or a money judgment against each defendant equal to the value of the assets transferred.

36. Plaintiff is further entitled to an award of exemplary and punitive damages against defendants, and each of them, according to proof.

### THIRD CLAIM FOR RELIEF

### COMMON LAW FRAUDULENT CONVEYANCE

### (Against Defendant Aston Business Solutions, Inc.)

37. Plaintiff refers to the allegations set forth in paragraph 1 through 36 hereof and incorporates said allegations herein as if fully set forth hereat.

38. No earlier than August 12, 2013, MacMillan and Martin caused Attitude Marketing to transfer its assets and good will to defendant ABS with the actual intent to hinder, delay, and defraud their creditors.

39. As alleged above, in efforts to avoid liability from their clients and creditors, MacMillan and Martin transferred substantially all of the marketing infrastructure and the access to the proprietary data base to entities that ostensibly were neither owned nor controlled by them, including and ultimately to defendant ABS.

40. Although defendants Erica Martin at first and then Glenn Chaffin were purportedly the sole officer and director, ABS has at all times been controlled by debtor MacMillan and operated for the benefit of debtors MacMillan and Martin. The transfer of debtor's assets, including the 2013 sale and transfer of the data base, were done with the purpose of hiding assets from the increasing number of creditors based on lawsuits filed against MacMillan, Martin, and their entities that were known to

the creditors.

41. Plaintiff is entitled to a judgment avoiding the transfers and/or a money judgment against the defendant equal to the value of the assets transferred.

42. Plaintiff is further entitled to an award of exemplary and punitive damages against defendant, according to proof.

## FOURTH CLAIM FOR RELIEF

## CIVIL CONSPIRACY

**(Against Defendants Aston Business Solutions, Inc., Erica Martin, and Glenn Chaffin)**

43. Plaintiff refers to the allegations set forth in paragraph 1 through 42 hereof and incorporates said allegations herein as if fully set forth hereat.

44. Defendants Erica Martin and Glenn Chaffin acted as co-conspirators with David MacMillan and Cynthia Martin in the scheme to effectuate the transfer of debtor's assets and good will, including the data base, to ABS with the intent to hinder, delay, and defraud creditors.

45. Defendants Erica Martin and Chaffin were at one time or another the ostensible owners and supposed sole officer and director of ABS but ABS was in fact controlled by David MacMillan for the benefit of MacMillan and Cynthia Martin. Defendant Erica Martin is Cynthia Martin's daughter. Defendant Glenn Chaffin is defendant Martin's husband and MacMillan and Cynthia Martin's son-in-law.

46. Defendant Erica Martin and Chaffin conspired with MacMillan and Cynthia Martin to transfer the assets and good will from Attitude Marketing to ABS. Defendants Erica Martin and Chaffin were aware that MacMillan and Cynthia Martin planned to fraudulently transfer the assets to ABS, an entity MacMillan and Cynthia Martin claim no ownership in, to hinder, delay, and defraud creditors.

47. Defendants knew that the transfer of assets and good will was a continued attempt by

MacMillan and Cynthia Martin to thwart the efforts of creditors to collect on judgments and/or debts owed to them. Defendants Erica Martin and Chaffin intended that the fraudulent transfer occur as they allowed their names to be used to represent them as the ostensible owner, officer, and/or director of ABS to further MacMillan and Cynthia Martin's plan to keep assets out of the reach of creditors.

48. Plaintiff has suffered damages as the debtor's estate was depleted of its valuable assets that could be used for the benefit of creditors in an amount to be determined.

49. Plaintiff is entitled to a judgment avoiding the transfers and/or a money judgment against each defendant equal to the value of the assets transferred.

50. Plaintiff is further entitled to an award of exemplary and punitive damages against defendants, and each of them, according to proof.

## IV.    PRAYER

WHEREFORE, Plaintiff prays for judgment as follows:

**FIRST, SECOND, AND THIRD CLAIMS FOR RELIEF:**

For a judgment against defendant Aston Business Solutions, Inc. avoiding the fraudulent transfers and/or for money judgments equal to the value of the assets transferred.

**FOURTH CLAIM FOR RELIEF:**

For a judgment against defendants Erica Martin and Glenn Chaffin for money judgments equal to the value of the assets transferred.

**ALL CLAIMS FOR RELIEF:**

1. For an award of exemplary and punitive damages against defendants, and each of them, according to proof.

2. For prejudgment interest;

3. For costs of suit; and

4. For such other relief as the Court deems just and proper.

Dated: December 23, 2109

DUMAS & KIM, APC

By: /s/ James A. Dumas
James A. Dumas,
Attorneys for Plaintiff and Chapter 7 Trustee,
Rosendo Gonzalez

12
COMPLAINT FOR FRAUDULENT TRANSFER AND TURNOVER OF PROPERTY